Good morning. Welcome to the Eleventh Circuit. We are so happy, Judge Lagoa and I, to share the bench today and tomorrow with our colleague from the Northern District of Florida, Judge Kent Wetherall, and we thank him for helping us out in this way. So he'll be sitting with us both today and tomorrow. I think you're all familiar with the way our system works, the lighting system. When the light turns red, you're out of time. Obviously, please answer our questions, even if it is beyond the red light, because if we're asking them, we want to know the answers to those questions. But other than that, we ask that you please respect our lighting system so that we can try to stay on time today. All right. Our first case of the morning is United States of America v. Gilberto Gonzalez-Gonzalez. And we will hear first from Ms. Kemp. Good morning. Good morning, and may it please the Court. Mr. Gonzalez's conviction for cocaine possession should be reversed because the government did not present sufficient trial evidence showing that he knew that his co-defendant, Daniel Corona, had hidden drugs inside a locked, concealed compartment in Mr. Corona's truck. The government presented a weak circumstantial case that included impermissible 4-4-B character evidence. That evidence consisted of memes and text messages on Mr. Gonzalez's cell phone. That evidence had little probative value because it was never linked in time and circumstance with the charged offense. That evidence was and it didn't show Mr. Gonzalez's knowledge of the drugs hidden in Mr. Corona's truck. The evidence was unduly prejudicial because the district court refused to give a 4-4-B limiting instruction. Therefore, the jury was allowed to infer guilt based on criminal propensity and guilt by association for a defendant that has absolutely no criminal history of any kind. Is there evidence in the text messages showing his knowledge of at least the wholesale price of cocaine? Well, what the evidence showed is that he had a conversation with another man who was discussing his possible involvement in drug activity. And there is a discussion about drug prices, but it's very clear from those text messages that it's the other man's conduct, not Mr. Gonzalez's conduct. Nothing in those text messages implicate Mr. Gonzalez and what the other man was doing. What was the time frame on those text messages in relation to when the actual incident occurred where the truck was pulled over? That particular text message occurred on November the 23rd of 2020. The traffic stop occurred January 25th, 2021. So there's a three-month gap. All of the other means and text messages occurred at earlier times. So there's a difference of months to years between when those means and text messages occurred and the actual traffic stop. It's interesting to note in this particular case that the jury found that Mr. Gonzalez was not guilty of conspiring with Mr. Corona. The government did not show that Mr. Corona had any knowledge of those drugs. He had only been in the truck for less than nine hours. His total contact with Mr. Corona and Mr. Corona's truck was just several hours. He had only met Mr. Corona that morning of the traffic stop. Mr. Corona had driven that truck all the way from Illinois, picked up Mr. Gonzalez at his home in Houston, Texas, and then Mr. Gonzalez took over basically as like a relief driver for Mr. Corona. Mr. Corona laid on top of the sleeping compartment, which is where the drugs were hidden, and while Mr. Gonzalez was driving, he had no access to those drugs. He could not see them. The only way that you could get into the compartment, you had to get out of the truck and unlock it, and Mr. Gonzalez never had a key to that compartment. Can I ask you a question about the jury instructions here? The comment that is made about joint possession can be between a husband and a wife who are sharing a car, I guess, or who are in a car together driving. That was not part of the prepared or agreed upon instructions, was it? It was not part of the prepared instructions. It was something impromptu that the judge said, and, Your Honor, we do acknowledge that we waive that issue and that that is under a plain error standard, but it is just another thing that happened in this case, which supports our position that Mr. Gonzalez's conviction should be reversed. You have a weak circumstantial case here. You have impermissible 444B character evidence. There's no limiting instruction, and then you compound that with the bad jury instruction. In addition to our arguments about certain evidence, Defendant's Exhibit 29 being excluded from admission. On that exhibit, what error do you believe the district court made there? Your Honor, that exhibit was a direct rebuttal to the government's expert witness. Mr. Noh testified based on generalities of what drug cartels do. So he basically said drug cartels don't use unaffiliated people. The only time that you have a blind mule is when somebody tries to send drugs through like the post office or a commercial carrier. And just, I'm sorry, on the point though, that evidence or that exhibit, was it being attempted to be introduced as impeachment evidence, correct? Well, as rebuttal evidence to what Noh testified. Mr. Gonzalez has always maintained that basically he was a blind mule. He had no idea what was in that truck, and Officer Noh said that in his years he'd never seen a blind mule and that drug cartels don't use unaffiliated people. But that's exactly what happened in this case. Go ahead, I'm sorry. No, it's okay. But counsel, it seems like the evidence, the same evidence came in anyway through the impeachment itself. I mean, didn't the agent admit that even though he hadn't seen it, it was possible and that he was aware that some others had in the past? He was allowed to look at the document and he did change his testimony. The district court would not allow defense counsel to bring it back up in any other capacity. They were excluded from presenting it to the jury, introducing it into evidence, or talking about it during closing. And so that's where we believe that the error happened. But it seems to me that what was attempted to be done there was impeachment through collateral evidence. I know the government's objection was hearsay, but when the judge talked about why he was not allowing the document to be introduced and simply the cross-examination to occur, it was really the collateral evidence rule. And I guess I'm not seeing any error in that determination that not allowing a piece of evidence to be presented through cross-examination for impeachment purposes. Your Honor, the district court said that the evidence wasn't admissible because it was irrelevant. And we disagree with that. We believe that the evidence was directly relevant. It bolstered Mr. Gonzalez's defense theory that he was a blind mule. And that's why we believe it should have been admitted to the jury and counsel should have been allowed to bring it up in closing. Was it authenticated? The government's witness, when he looked at the evidence, he testified that it did appear to come from the prosecutor's office in the Western District of Texas. And under the rule, all that is required is a prima facie showing that the document is what it purports to be. But how does that show that it is what it purports to be? Was there testimony that he was familiar with what it would have looked like that he had worked in that office or anything of that nature? There wasn't that testimony. But there was testimony on his credentials that he was a DEA agent, that he had been a DEA agent for over 30 years. And so we believe that that was sufficient for him to testify as to where that document came from. The government never objected to the evidence on the grounds that it was unauthentic. That is true. But as you know, affirmances can be made for any reason that is valid from the face of the record. And so I guess I'm just trying to figure out with respect to that particular document and that agent, had that agent ever worked in the district that this letter came from? No, Your Honor. There was no evidence introduced that he had worked in Texas. I believe he was a DEA agent from Georgia. But because he was an agent for a significant period of time, we believe that that is sufficient for him to be able to identify the seal that was on the document and identify where it came from. And the rule only requires that prima facie showing,  and the government has never introduced any evidence showing that what Mr. No provided was insufficient for us to make that showing. Your Honor, I would just like to point out that the admission of that 44B character evidence without any type of limiting instruction from the court definitely resulted in Mr. Gonzalez being convicted in this case. Mr. Gonzalez has absolutely no criminal history whatsoever. Well, I mean, to be fair, our review here is looking at the evidence in the light most favorable to the judgment. And it seems to me that there was a lot of circumstances surrounding the stop that the officer testified to where Mr. Gonzalez admitted he was a driver and downplayed Mr. Corona's role as being the driver. And then all of the different circumstances the officer went through in describing that he didn't act like a truck driver, he didn't know much about what was going on with his paperwork, he was transporting junk, essentially. I mean, all of those circumstances, it seems to me, are consistent with what the jury did, irrespective of the 404B evidence. Well, those circumstances are consistent with the fact that Mr. Gonzalez was only involved with Mr. Corona in his truck for a few hours. It made sense that he was, the officer said he could tell that Mr. Gonzalez was unfamiliar with the truck. Well, that makes sense. He had only been in the truck for a few hours. He had no prior association with Mr. Corona. The officer also said that when he started asking for documents, it was Mr. Corona that took over the stop and had to direct Mr. Gonzalez to where to get those documents. And when the officer also said that when he told Mr. Gonzalez, hey, the address on this bill of lading is to a produce store, Mr. Gonzalez's response was, huh? There are transmissions in the crate. So it's very clear that Mr. Gonzalez did not know what was going on. His involvement was very limited. It started that morning. And he had no idea that Mr. Corona had hidden drugs in Mr. Corona's truck. Thank you, counsel. All right. We will hear next from Mr. Gray. Thank you, and may it please the court. Scott Gray on behalf of the United States of America. A jury heard evidence, circumstantial evidence, that Gilberto Gonzalez-Gonzalez knew about the 15.86 kilograms of cocaine inside the truck he was driving and found him guilty of drug distribution. This court should uphold the jury's verdict and affirm his conviction. Counsel, let me tell you what's troubling me about this case. Certainly. I think I think a number of the memes were probably admitted in error. And I think that the jury instruction was error as well. And my concern and let me tell you, I'm especially concerned about the jury instruction. The reason why is because even though the defense did not object, it seems to me that it was an incorrect statement of the law. The statement about how if the husband and wife are driving together in a car, they're in joint possession of the vehicle. And it also seems like that might have been the whole ball of wax here because it didn't really matter who was in possession of the truck. What mattered was who was in possession of the cocaine. Right. And it seems like that instruction suggested that because Mr. Gonzalez-Gonzalez was in possession of the truck, that the next logical step would be he was in possession of the cocaine. And obviously, that is a concern. So I'd like to give you a chance to address that. Certainly, Your Honor. I'll start with the instruction itself and whether it's erroneous. And respectfully, I think the instruction, while perhaps imperfect, is still a fair analogy to the concept of possession. Well, let me ask you this question about that. Certainly. What if it's a hitchhiker and the owner of the car driving together in the car? Is the hitchhiker in joint possession of the car in that case? I'm not necessarily on that fact alone. Well, I mean, the answer is he's not, right? I mean, you can't say that the hitchhiker is in joint possession if he's just in the vehicle, right? I don't think that I would say that presence of – I would say that his presence is a factor that may be considered for his possession of the thing. All right. Let me ask it to you this way, then. Would you agree with me that the fact that the example used is a husband and wife bears heavily on whether they're in joint possession? It is a significant factor, I think it's fair to say, in the hypothetical. Okay. And Mr. Corona and Mr. Gonzales-Gonzales were not husband and wife, right? That's correct. Okay. So it seems to me that the suggestion that any time the two people are in a vehicle together, they are in joint possession of the vehicle, is wrong as a matter of law. It's just – it's an erroneous instruction. And I wonder what your thought is on that. I think that what the court was driving at was to say that two people can be in possession of a thing. And what the court is saying is that when I and my wife have my car, we can be in joint possession of the vehicle even though we are both inside. Maybe that instruction could be better delivered. Maybe there could be additional factors that are placed in there. However, when the court reviews a jury instruction, when this court reviews a jury instruction, the district court has broad discretion to decide how to frame that instruction. And really, I think the two closest – But they don't – the district judge does not have discretion to give an instruction that is incorrect, right? I mean, if a district judge gives an instruction that is legally incorrect, as a matter of law, it is wrong. That is plain error. Would you agree? I agree with – I think that there's an extra step in there. But I agree with you, Your Honor, that the court is absolutely correct that a district judge cannot give an erroneous statement of the law. Now, for there to be plain error, there needs to be Supreme Court or 11th Circuit precedent that is directly on point. That's not necessarily so. I mean, there does if it's unclear whether – if it's subject to an interpretation or something of that nature. But we have said before that if you give an incorrect jury instruction, that that is legal error. Have we not? We don't always say that it's harmful error. Sometimes it turns out to be harmless error. But we've always said that if you give an incorrect jury instruction, that that is legal error. Yes, but I think that skips a step in the plain error analysis. I absolutely agree with that formulation when there is preserved error. The court looks at the instruction and says, is the instruction erroneous? If it's an incorrect statement of the law, it is erroneous. And then the court proceeds to look at whether it's harmless. When there is no timely objection and when the error is preserved, the court then reviews it for plain error. And then it looks at the traditional four prongs of plain error analysis. First, is there an error? So is the instruction, in fact, erroneous? Second, if the instruction is erroneous, is it plain as a matter of law? And generally what this court has said is that an error is sufficiently plain when there is a Supreme Court or 11th Circuit. That's true, but we've also said if it is clearly contrary to the language of a statute or, you know, regulation or whatever the case may be. In other words, if it clearly is contrary to the statement of the law. And that is my concern here, that this particular instruction seems to me to be clearly contrary to what the law is, in that it suggests that any time two people are in a vehicle together, they are in joint possession of the vehicle. And respectfully, I think that what the court was trying to say is that when two people with a relationship are in a vehicle,  that's not what it said, right? It didn't say the husband and wife can be in joint possession. It said if I'm in my car with my wife, driving with my wife, we are, we are in joint possession of the vehicle. That's what the court said, right? Yes. Okay, and that is the problem that I'm seeing with the instruction. You know, I welcome you to address it further, but the other part of this, I think, would be whether it's harmful or not, right? Yes. I think I'll pivot to that, to that other point of the analysis. And I think there, the fundamental point, and this really permeates each of the issues in the case, this wasn't a weak circumstantial case. This was a strong one. And the jury readily could find, let me ask you this. It seems like you may have skipped a step because it seems to me your strongest argument on the jury instruction is when you look at the instructions holistically, there was ample instruction in there that the court instructed you must find beyond a reasonable doubt the defendant was a willing participant, not merely a knowing spectator, actually knew about the substance or had reason to know, every reason to know, but deliberately closed their eyes. So it seems like irrespective of the maybe ill-advised analogy the court used, the crux of what the jury had to find, they were advised of. Your Honor, that's a very fair point, and I absolutely agree. There's really that point, number one, that the court has to review the instruction as a whole and look at what the court said as a whole about the elements of the offense and what that requires and that point. There's also other – there's also the fact that really the inference that the defendant really asserted was error was that by – okay, it wasn't necessarily the question that the court has been driving at today, but it was the point that by focusing on the vehicle, the court shifted from the focus of the vehicle to its contents. I perceive the court's questions today to be on a bit of a different inference, which was whether sort of the joint possession instruction was wrong holistically. The defendant's argument was that shift, and I would argue that the argument the defendant raised certainly wasn't plain error in the light of the Cochran decision, where the court was concerned with a more fundamental shift in what possession is. And so I certainly would make those two points, but if the court has further questions on that aspect of the instruction, I'm happy to talk about it, but otherwise I'll pivot it to the evidence. And the evidence in this case, while there are a lot of items of evidence, there are really two categories that illustrate that there is compelling circumstantial evidence of knowledge in this case. The first is entrustment, and the second is consciousness of guilt. Either of those theories would be sufficient standing alone to support the jury's verdict in this case, but here they actually work together because both are present. First, with entrustment, this court has recognized that a jury may infer knowledge from the control of entrustment and trust with valuable cargo over a period of time. That standard, the Cuoco-Carpio prudent smuggler standard, readily is met here. For starters, the cocaine certainly was valuable. There's no real dispute about the value of the quantity. There were 15.86 kilograms. The United States expert known testified to both the retail and the wholesale value of those drugs. There is also significant evidence of entrustment. The defendant's own words, which are in the record in document number 184-1, pages 84 and 85, talk about the fact that he admitted to driving for the entirety of the journey, 9 or 10 hours across multiple states, while the other individual in the vehicle slept the whole time. So the jury easily could find entrustment on that evidence, and under the Cuoco-Carpio principle, that is sufficient. Alternatively, the jury also could consider the evidence that the defendant's consciousness of guilt. I know the court asked a number of questions about that. But, you know, let's just assume for a moment. Let's play devil's advocate here. Let's assume his part of the story, right, which is, I didn't know it was cocaine. He asked me to drive. I'm a truck driver. I didn't have anything else to do. It's COVID. So I said, fine, I'll do it. So, you know, the compartment with the drugs is locked. He never, there's no indication that he ever had any access to it. I mean, it's quite possible that he didn't know that that's what was in there. And it's one thing to entrust a vehicle to someone when you leave them all by themselves with it. It's something wholly different when you go along for the ride. Why isn't that a different situation? So I would poke at those facts a little bit. First, I think it's not entirely clear whether the compartment's locked. My recollection of the record is that they don't have the key to the box. But there's a there's a knife edge, I think, buried sort of in some trailing arm around that with marks along it, which appeared that it had been pried. I thought they had to, I had, I thought in order to open it, they had to sort of pry it with a screwdriver or something in order to open it. Corporal Colby, I think, used a screwdriver to open it. And I believe they found when they ultimately searched a portion, a part of a knife, like a knife blade that was stuck in an arm of the truck. So there was at least some circumstantial evidence of access in the case. But neither of them had a key to open the compartment. That's absolutely right. However, the absence of the key is actually pretty compelling evidence when dealing with a professional truck driver, that there's a problem with it, that there's consciousness of guilt there. There's testimony in the record, both from Corporal Colby, but also from one of the defendant's own witnesses, who was a commercial driver, who testified that when you do a safety inspection, as Gonzalez attempted to do alongside the roadway, that one of the fundamental things you're looking for is safety equipment. And for commercial drivers, where safety equipment is stored is in the dog box. So, which is what this storage compartment colloquially is called, apparently, in the trucking industry. So the fact that he carried around the dog box, the fact that he did a safety inspection without any safety equipment, those are all compelling factors that support the defendant's consciousness of guilt. There's also the fact that there wasn't current paperwork on this truck, and this defendant knew that. He indicated that he knew that something was wrong with the bill of lading. And I will note one discrepancy in the record on that bill of lading. If the court looks at the testimony, it's document number 184, page 84, Corporal Colby testified in real time that the bill of lading was dated October 13th. If the court looks at the actual exhibit, it's dated November 13th. So there is a one-month discrepancy there, which I just wanted to point out to the court. But the bill of lading is outdated either way. The insurance card is years out of date. And all of that evidence is evidence of consciousness of guilt. And to tie those, was there also evidence that when the drugs were found, the defendant here did not act surprised? Or am I misremembering that? That's exactly right. So two facts on that point. One, exactly to the court's point, when the drugs were found, there was no surprise or confusion about that moment. Corporal Colby also testified at the beginning, and this is in his testimony, it's document 184, pages 72 and 73, that he was nervous before the stop and described that nervousness as a greater nervousness than motorists typically face and a nervousness that did not abate even as he told him that he would not write the ticket. That fact alone is not sufficient for consciousness of guilt. But it absolutely is something the court can and should consider. I see you're low on your time. I want you to address also, if you would, the memes. I mean, it seems to me that the vast majority of the memes have no relevance whatsoever or such minimal relevance and such heavy probative value, if you will value, I guess, probative effect, that it was error to admit most, not all of them, but most of them. And when you put that in conjunction with the error in the jury instructions, I'm very troubled by that, and I wonder if you would address why that wasn't harmful error. Absolutely, Your Honor. And my starting point, again, would be the nature of the evidence in this case. The other thing is that, and I don't— Okay, so this is not a case of overwhelming evidence. I mean, I don't know, would you concede that? I don't know whether I would use the word overwhelming. I certainly would say, similar to what this court said, I want to say in the Sanders decision, that there was abundant evidence. I don't think this is a close case that is on the line between guilty and innocent. I also don't think—I'm not cutting you off, am I? No, no, it's okay. You can finish your answer. But I would also note that this evidence— First, I don't want it to be lost that the defendant didn't break the evidence out in this way. The defendant challenged the cell phone evidence wholesale and also has addressed it under a 404B theory, whereas the district court found that this was inextricably intertwined res gestae evidence. Well, that's clearly wrong in my opinion. I mean, we're talking about texts and memes that were from months and sometimes years before this event occurred. I don't know how that could be inextricably intertwined. And they're talking about use of—for the most part, they're talking about use of cocaine, not transportation or sale of cocaine. Well, Your Honor, I think that there's the context, motive, and setup of a crime. And all criminal activity, just like any other event in life, exists along a spectrum. And courts have broad discretion to determine when that spectrum begins. And I will note the district court had a relatively broad view for both parties in this case. Gonzales certainly introduced plenty of exhibits concerning what he believed to be legitimate trucking activity on his behalf as part of his defense. But to get to the core of the harmlessness point, in addition to the strength of the evidence, the other factors I would ask the court to consider, number one is the nature of the case itself and what the issues were. This isn't a case like Faconconi and Gamory and some of these others where the court has found the error to be harmless, but there were a lot of issues in the case. Here, the central issue was knowledge. That really was the issue in the case. But, I mean, look, there are memes like, you know, Harry Potter's character saying, oh, the cocaine is so pure that that's why Voldemort doesn't have a nose. I really don't see how that goes to whether the defendant here had knowledge that he was carrying cocaine in the truck. I mean, how is that, certainly not, how is that inextricably intertwined? And not only that, it's from like two years before this even occurred. So I'd be really interested in hearing how that's inextricably intertwined. So it's over a year ago, I think. I don't know that it's two years back. But I can see the point that it's well in advance of the time. I certainly think that the district court, reasonably at its discretion, could conclude that all of this evidence amounted to a crescendo of activity in which the defendant had an interest, familiarity, and awareness about cocaine and other drugs. He had an interest and awareness in trucking. And that over time, that interest and awareness grew to a knowledge and awareness of cocaine pricing and an interest and motive to be involved in the cocaine trafficking business, which then culminated with being found in Baldwin County, Alabama, with 15.86 kilograms of cocaine in his truck. Okay. Thank you, counsel. I think we've got your argument. Thank you, Your Honor. We appreciate it. Thank you. All right. Ms. Kemp, you have two minutes. Your Honor, basically what happened in this case is Mr. Gonzalez, his friend, called him up the night before this traffic stop and said, hey, can you help this guy out and drive his truck? Mr. Gonzalez did not have any prior association with Mr. Corona. The government said that the jury's verdict can be sustained. But did he not have, did the text messages not demonstrate that he had association with people who did have association with Mr. Corona who were involved in the drug trade? The text messages show that Mr. Gonzalez may have had association with someone who could have been involved in drugs, but you cannot establish or prove a constructive possession theory based on mere association with the person that's involved in drugs. The government had to show that Mr. Gonzalez knew about the drugs inside that truck, and that is not what the evidence shows here. The government brought up the entrustment theory. The difference between this case and Quilka Carpio is that the defendant in that case had his personal luggage that he traveled all the way from Lima, Peru with. That's not what happened in this case. In this case, our defendant was only in the truck for a few hours. It wasn't his truck at all. The government brought up the consciousness of guilt, but Officer Colby said, yeah, he was nervous, but Officer Colby also said that it was Corona who was more nervous than Mr. Gonzalez. He even made note of it in his police report, and he thought it was odd that Corona would be more nervous than the driver since he wasn't the one pulled over. But Mr. Gonzalez was a truck driver. He had a commercial license, correct? He did have a commercial license, but it makes sense that Mr. Corona wouldn't know everything about, that Mr. Gonzalez wouldn't know everything about Corona's truck or the documents inside that truck because Mr. Corona was riding with him, and Colby made it very clear that it was Mr. Corona that was directing that traffic stop. Mr. Gonzalez was not. Mr. Gonzalez was not in control. He had to get instructions from Mr. Corona on where to get the documents out of the truck in order to present it to the police officer. Thank you, Counsel. All right. Thank you both.